IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OSCAR GATES,

    Petitioner,

  v.

KEVIN CHAPPELL, Warden,

    Respondent.
_____/

No. C 88-2779 WHA

**ORDER DENYING REQUEST FOR STAY PENDING COMPULSORY RESTORATION PROCEDURES**

### INTRODUCTION

Petitioner Oscar Gates was convicted in 1981 of, *inter alia*, murder (Cal. Penal Code 187(a)), accompanied by the robbery-murder special circumstance (Section 190.2 (a)(17)(A)), two counts of robbery (Section 211), assault with a deadly weapon (Section 245(a)), possession of a firearm by an ex-felon (Section 12021), and escape (Section 4532(b)). His federal habeas petition was initially filed in 1988. In 2000, this matter was transferred to the undersigned and was eventually stayed by our court of appeals, based on petitioner's incompetency. *Rohan ex. rel. Gates v. Woodford ("Gates")*, 334 F.3d 803 (9th Cir. 2003).

In 2004, petitioner was again adjudicated to be mentally incompetent (petitioner had previously been found incompetent in 1994) and the stay of this matter remained in place. At that time, attorneys for petitioner and respondent agreed that petitioner was incompetent. On January 8, 2013, however, the Supreme Court abrogated *Gates* and held that an incompetent

capital prisoner has no right to an indefinite stay of habeas proceedings. *Ryan v. Gonzales*, ___ U.S. ___, 133 S. Ct. 706–09. The Supreme Court further held that while the decision to grant a temporary stay is within the discretion of the district court, an indefinite stay is inappropriate if there is no reasonable hope the petitioner will regain competence in the foreseeable future. *Id.*

Following *Ryan*, the stay in this matter was subsequently lifted, and the parties commenced briefing on the merits (and inconclusive settlement proceedings). In addition, the Court ordered the parties to meet and confer, and to present a joint plan for further examination of petitioner Gates. The parties were unable to submit a joint plan, though they did find some areas of agreement. In addition, the parties were unable to agree on a mental health professional; instead, both parties submitted three potential experts to be considered by the Court for appointment.

The Court appointed Dr. Jessica Ferranti to examine petitioner (Dkt. No. 740). Subsequent to her examination, Dr. Ferranti submitted a thorough and detailed report of her findings and conclusions. Both sides filed responses to her report. Additionally, both sides filed briefs addressing the following issues: (1) whether the State of California/California Department of Corrections and Rehabilitation has a legal obligation to provide treatment to an incompetent prisoner for restoration of competency; and (2) whether a federal court in a habeas proceeding has the authority to mandate such treatment. The Court has now reviewed all of the pleadings submitted by the parties, as well as all relevant documents in the voluminous record of this case, and hereby enters the following order.

**STATEMENT**

**1. COMPETENCY EXAMINATION AND EXPERT REPORT.**

The Court ordered a competency examination of petitioner pursuant to Rule 35(a) of the Federal Rules of Civil Procedure. After careful review of the proposed experts submitted by petitioner and respondent, the Court appointed Dr. Ferranti to examine petitioner Oscar Gates. She was retained by the Court as an independent expert and not as a representative of either party.

Dr. Ferranti's exam was focused on determining petitioner's competency, as well as his current symptomology, details of any diagnosed illnesses, and his possible amenability to treatment. Her report, *inter alia*, summarized the purpose and procedure of the examinations conducted; listed any materials considered in conducting the evaluation; documented petitioner's behavior, statements and condition during the examination; stated the clinical basis for any diagnosis; and stated her professional diagnoses. She considered petitioner's competency in accordance with the following standard: whether petitioner Gates has the capacity to appreciate his position and make rational choices with respect to proceedings in this Court or, on the other hand, whether he is suffering from a mental disease, disorder or defect that may substantially affect his capacity. In addition, Dr. Ferranti considered whether petitioner currently has the capacity to understand his position and communicate rationally with counsel regarding this matter.

Dr. Ferranti concluded with reasonable medical certainty that, as the result of mental disorder, petitioner is incompetent, *i.e.* that he does not have the capacity to make rational choices with respect to his Court proceedings or to communicate rationally with his attorneys (Ferranti Report at 16–18). She diagnosed petitioner with Delusional Disorder, Persecutory Type, a major mental disorder, and Antisocial Personality Disorder (*id.* at 11–15). Additionally, she concluded that petitioner was not malingering (*id.* at 15–16). Her diagnosis and conclusion are consistent with those of previous doctors who have examined petitioner. Both sides agree that Gates is incompetent. That, however, is no longer grounds to stay the case indefinitely. *See Gonzales*, 133 S. Ct. at 706–09.

**2.    POTENTIAL FOR RESTORATION TO COMPETENCY.**

The main issue now is whether to mandate that the state try to restore Gates to competency and to stay the case in the meantime. As requested by the Court, Dr. Ferranti also considered whether petitioner's competency could be restored. She concluded that, in her professional medical opinion, petitioner's prognosis for treatment is poor (Ferranti Report at 18). The bases for her opinion were as follows (*ibid.*):

3

1. Of all psychotic symtomatology, delusions are the most difficult symptom to treat and can often [] remain refractory to antipsychotic medication. Of all types of delusions, persecutory delusions are the most difficult type of delusion to treat and have the poorest outcomes with treatment.

2. The medical literature suggests that individuals with psychosis who receive early treatment after the onset of psychosis have better outcomes. Mr. Gates has refused psychiatric treatment for almost forty years. The later administration of antipsychotic medication is a poor prognostic factor.

3. Based on my review of Mr. Gates's writing titled, "Motion of Objection to ("illegal") attempt by the Court Into a (prejudicial and dmaging) (sic) non permissible psychological evaluation. . .: (Filed 7/03/14 after my evaluation of Mr. Gates), Mr. Gates appears to have incorporated me into his delusional construct based on our encounters on 06/23/2014 and 6/24/2014. The medical literature on delusional disorder suggests that elaboration of delusional ideas to encompass new experiences, new people or to answer hypothetical challenges is a poor prognostic factor in individuals with delusional disorder.

4. Mr. Gates has poor insight into the nature of his mental disorder. Prognosis is worse in individuals with poor insight into their mental illness.

5. Mr. Gates has a long history of refusing psychiatric treatment. It is unlikely that he will voluntarily adhere to antipsychotic medication and so he will need to have medication administered involuntarily. Prognosis is worse in individuals who do not engage in treatment voluntarily.

While cautioning that delusional disorders are "very difficult to treat under the best of circumstances," Dr. Ferranti recommends that, if a treatment program for petitioner is to be started, it should be a multi-modal program including pharmacotherapy and counseling (*id.* at 18–21). This would include, *inter alia*, antipsychotic medications and an individualized competency restoration plan (*id.* at 19–21). Dr. Ferranti cited studies that suggest that patients with petitioner's particular diagnosis of Delusional Disorder with persecutory delusions have

4

"generally poor response rates" to treatment, with about fifty percent of patients experiencing improvement. Because petitioner has repeatedly indicated that he is not amenable to treatment or to participation in therapy, Dr. Ferranti opines that "he is likely to require involuntary administration of medication" (*id.* at 21). In sum, Dr. Ferranti concludes that petitioner "is very unlikely to be amenable to treatment and his prognosis with treatment is poor" (*id.* at 22).

### 3. RESPONSE BY COUNSEL.

Both sides concur that Gates is incompetent but differ as to whether compulsory treatment for attempted restoration to competency is warranted. Respondent maintains that because Dr. Ferranti concluded that petitioner would be unamenable to treatment, that his prognosis is poor, and that restoration to competency would be unlikely, restoration treatment should not be ordered and the habeas petition should continue to be addressed on the merits. Respondent also argues that petitioner has not made an adequate showing that petitioner's competence is needed to resolve any of the claims in the petition.

In addition, respondent states that there is no intention to medicate petitioner involuntarily absent a Court order. The California Department of Corrections and Rehabilitation ("CDCR") has confirmed this via pleadings submitted to the Court. According to the CDCR, state law forbids it from involuntarily medicating an inmate absent a Court order finding either that the inmate is gravely disabled and incompetent, or that the inmate is a danger to others, or to self. *See*, *e.g.*, Cal. Welf. & Inst. Code Sections 5008(h), 5300; *Keyhea v. Rushen*, 178 Cal. App. 3d 526, 541 (1986).

Petitioner's counsel, on the other hand, argue that competency restoration proceedings should be attempted. Petitioner's counsel cites to a study indicating that 77% of a group of federal criminal defendants with delusionary disorders were restored to competency with treatment (although it is not clear whether those defendants had persecutory delusions, as petitioner Gates does). In addition, petitioner's counsel maintain that Gates may be amenable to treatment and notes that there are long-acting injectable forms of certain medications that might make compliance easier (or lessen the times forced medication is needed).

1    Petitioner's counsel also argues that petitioner's input is needed for various claims in the
2    petition, such as ineffective assistance of counsel. Counsel maintains that, if competent,
3    petitioner could share critical information with counsel, such as identification of potential
4    witnesses and conversations with his now-deceased state counsel. Accordingly, counsel for
5    petitioner requests that the matter be stayed pending mandated restoration proceedings, and also
6    requests an evidentiary hearing if necessary for factual development of these issues.

## ANALYSIS

*Ryan v. Gonzales,* 133 S. Ct. 696, 709 (2013), held that an incompetent capital prisoner has no right to an indefinite stay of habeas proceedings. The Court further held that while the decision to grant a temporary stay is within the discretion of the district court, an indefinite stay is inappropriate if there is no reasonable hope the petitioner will regain competence in the foreseeable future. *Ibid.* The parties do not cite to any caselaw on the specific issue of competency restoration pursuant to *Gonzales* in a Section 2254 action.

This Court is aware of only one federal district court in this Circuit that has squarely addressed mandated competency restoration proceedings of a capital habeas petitioner in light of *Gonzalez*. In *Mulder v. Baker*, Judge Philip M. Pro had earlier denied a stay based on petitioner's incompetency, finding that "there is very little, if any likelihood that petitioner will regain competence in the foreseeable future." Petitioner filed a motion for reconsideration of the stay denial, arguing — as counsel do here — that there was "a reasonable probability he can be restored to competence in the foreseeable future and that the State has an obligation to assist in that effort." 2013 WL 5758061, *1 (D. Nev. 2013).

Judge Pro found that petitioner had not established a reasonable probability that he would be restored to competency. *Id.* at *5. Additionally, Judge Pro held the following:

> Moreover, even if his claims about the amenability of his condition to rehabilitation are accurate, Mulder has not established that the State has a legal obligation to provide the recommended treatment or, more to the point, that a federal court in a habeas proceeding has the authority to mandate it. The exclusive purpose of this action is for Mulder to seek relief "on the ground that he is in custody in violation of the Constitution or law or treaties of the United

6

> States." 28 U.S.C. § 2254(a). If the State's conduct amounts to deliberate indifference to Mulder's medical needs, as he claims, his recourse is through an action brought under 42 U.S.C. § 1983. *See Toguchi v. Chung*, 391 F. 3d 1051, 1057 (9th Cir. 2004).

*Ibid*.

Subsequent to this order, petitioner in *Mulder* filed a request for permission to file an interlocutory appeal under 28 U.S.C. 1292(b). The Court denied this request. *Mulder v. Baker*, 2013 WL 6039046 (D. Nev. 2013). Petitioner then filed a petition for writ of mandamus with the Ninth Circuit. Because petitioner did not demonstrate clear error on the part of the District Court, the petition for writ of mandamus was denied. *Mulder v. District Court*, No. 13-74037 (9th Cir., Dec. 16, 2013).

This Court agrees with Judge Pro. There is no clear authority regarding whether a district court may compel competency restoration proceedings in a Section 2254 action. Moreover, it would be an extraordinary step for a district judge to force psychotropic drugs on an unwilling petitioner all in hopes that he might snap out of his incompetence.

Even assuming that a federal habeas court has the authority to mandate competency restoration treatment, the Court declines to do so based on the facts in this matter. Dr. Ferranti concluded that petitioner's prognosis was poor, even with involuntary administration of medication, an extraordinary step and intrusion on petitioner's autonomy that this Court would be unwilling to order absent a significant showing that forcible medication was essential for petitioner's health and well-being, or was substantially likely to restore competency (Ferranti Report at 18–21). Petitioner's counsel argue that there is medical literature indicating that the petitioner's chances for restoration to competency might be higher than the odds given by Dr. Ferranti, and also maintain that it is premature to consider whether forcible medicating will be necessary, arguing that "details of treatment may only be determined after experienced clinicians actually dedicated to Mr. Gates' welfare perform an initial assessment on Mr. Gates in a clinical setting" (Pet.'s Reply to Resp.'s Sup. Br. at 4–5, n.3). In light of Dr. Ferranti's detailed report and recent examination of petitioner, however, the Court finds that petitioner's

7

arguments are not persuasive and that counsel have not demonstrated that, even with treatment, petitioner is likely to regain competency within a reasonable time period.

Accordingly, the Court finds and concludes that, even with Court-mandated compulsory treatment, petitioner is unlikely to regain competency within a reasonable time period. Even if petitioner was voluntarily willing to undertake the recommended treatment, this order finds that there is no reasonable prospect of success. Therefore, counsel's request for a stay is **DENIED**. The consideration of petitioner's claims on the merits will proceed. The parties have submitted briefs regarding five of petitioner's claims; the Court will schedule a hearing if necessary.

**IT IS SO ORDERED.**

Dated: November 7, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE